# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| J.T., *by and through his parent and next friend*, JAMIE HARVELL, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )　　　No. 4:08CV1431RWS |
| | ) |
| MISSOURI STATE BOARD OF EDUCATION, et al., | ) ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff J.T., by and through his parent and next friend, Jamie Harvell, filed this Complaint against Defendants Missouri State Board of Education, Missouri Department of Elementary and Secondary Education, State Schools for the Severely Handicapped, and Festus R-VI School District seeking injunctive and monetary relief under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"), Section 504 of the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1983 for violations of the Equal Protection Clause of the United States Constitution. Three defendants, Missouri State Board of Education, Missouri Department of Elementary and Secondary Education, and State Schools for the Severely Handicapped, collectively herein referred to as "State Defendants," have moved to dismiss for lack of subject-matter jurisdiction and for failure to state a claim.

For the reasons set forth below, I will grant State Defendants' motion in part and deny it in part.

***Background***

In his complaint, J.T. alleges:

J.T. is a severely disabled seventeen year-old student who has been diagnosed with Trisomy 15 & 18 genetic disorders, Spastic Quadriplegic Cerebral Palsy, seizure disorder and a thyroid condition. J.T. has been a student at Mapaville State School for the Severely Handicapped for the last twelve years.

Mapaville is one of several State Schools for the Severely Handicapped[1] ("State Schools"). The State Schools are operated by the Missouri Department of Elementary and Secondary Education ("DESE"), the state agency responsible for accreditation and management of public schools in Missouri, including Mapaville. The Missouri State Board of Education ("State Board") is responsible for supervising instruction in all public schools in Missouri. Festus R-VI School District is a public school district.

Because J.T.'s disabilities entitle him to receive special education and related services under the IDEA, an Individual Education Program ("IEP") was developed for him. Until December, 2007, J.T.'s IEPs did not contain adequate goals. Although J.T. needed stretching goals to be included in his IEP, a stretching goal was not added to J.T.'s IEP until 2007. School staff were aware that J.T. needed to stretch in order to receive a meaningful educational benefit, but teachers and aides failed to conduct the necessary stretching techniques. Furthermore, until November, 2007, J.T. was left to sit in his wheelchair all day, except for toileting. As a result,

---

[1] On August 28, 2008, the State Schools for the Severely Handicapped was renamed the Missouri Schools for the Severely Disabled. Mo. Rev. Stat. §162.730; L.2008, H.B. No. 1807, § A. Because the parties refer to the defendant as "State Schools for the Severely Handicapped" in the complaint and in their memoranda, I will also use that name.

J.T.'s body conformed to the shape of his sitting position in the wheelchair and his gross motor skills regressed. This failure to implement J.T.'s IEP prevented J.T. from receiving a meaningful educational benefit in critical areas of need, specifically physical and occupational therapy.

J.T.'s abilities also regressed in other areas. J.T.'s ability to stand up straight and his general flexibility have regressed. His cognitive skills regressed from the nine month level to the six month level during the period from 2005 to 2008. J.T.'s language skills regressed from the ten month level to the six to nine month level as well.

Until December, 2007, J.T.'s classroom was disorganized and Defendants did not adequately implement J.T.'s classroom instruction as required by J.T.'s IEP. After J.T received a new IEP which did contain adequate goals, Defendants did not provide the adaptive equipment needed to implement the new IEP.

J.T. alleges his experience at Mapaville is not abnormal because Mapaville's inadequacies are systemic. Staff are unsupervised and unaccountable for their failures to effectuate IEP goals or otherwise treat the students with human dignity. Mapaville's chronic inadequate supervision, staff apathy, lack of training, underskilled service providers, undertrained teachers and aids and untended classrooms have resulted in a trivial and meaningless education for J.T. Additionally, J.T. has suffered emotional and physical abuse at Mapaville. These inadequacies, along with Defendants' failure to develop and implement J.T.'s IEPs, have denied J.T. a free appropriate public education.

In response to these failures, J.T. sought relief through the administrative process provided by the state of Missouri. On March 20, 2008, J.T. filed a due process complaint with DESE. The Chairperson of the hearing panel addressed two issues: (1) whether J.T. received a

free appropriate public education for the two years preceding the filing, and (2) whether J.T.'s individual education program was reasonably calculated to provide an educational benefit. J.T. sought leave to amend to add claims under the Rehabilitation Act, the ADA and the Equal Protection Clause. Leave to amend was denied because the panel lacked jurisdiction over those issues.

The due process hearing was held on August 6, 2008. Before the hearing, J.T. moved for a continuance because his pediatrician was unavailable. That motion was denied. At the hearing, the Building Administrator, Mary Schilling, successfully moved to quash the subpoena compelling her testimony based on a handwritten note purportedly written by a medical doctor several weeks earlier. J.T. requested a continuance because Schilling was a key witness. The panel denied his request. Despite its conclusion that J.T. had regressed on his physical therapy goals, the panel determined that J.T. had received a free appropriate public education.

J.T. requests increased service minutes as a compensatory benefit based on Defendants' lack of classroom instruction during the 2006-2008 school years. J.T. believes these related services minutes should be provided by the Jefferson Memorial Hospital Rehab.

### Legal Standard

When ruling on a motion to dismiss for failure to state a claim, I must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. Fed. R. Civ. P. 12(b)(6); Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). To avoid dismissal for failure to state a claim, the complaint must contain "a short and

plain statement of the claim showing that the pleader is entitled to relief." <u>Erickson</u>, 127 S. Ct. at 2200. Although the specific facts are not necessary, the plaintiff must allege facts sufficient to give fair notice of what the claim is and the grounds upon which it rests. <u>Id.</u>

Rule 12(b)(1) requires dismissal if the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A district court has subject matter jurisdiction in civil actions arising under the laws of the United States. 28 U.S.C. § 1331.

### *Discussion*

### I. *Standing*

The United States Constitution vests federal courts with jurisdiction over federal questions only if there is a "case" or "controversy." Article III, § 2; <u>Raines v. Byrd</u>, 521 U.S. 811, 818 (1997). One element of the case or controversy requirement is that the plaintiff must establish he has standing to sue. <u>Id.</u> "To establish standing, a party must, at a minimum, have suffered an 'injury-in-fact,' fairly traceable to the defendant's conduct, which is likely to be redressed by a favorable decision." <u>Johnson v. Missouri</u>, 142 F.3d 1087, 1088 (1998). "An 'injury-in-fact' is an actual or imminent invasion of a legally protected interest, which is both concrete and particularized" to the party seeking relief. <u>Id.</u>

### A. *Injury to others*

State Defendants argue that J.T. attempts to seek relief for "systemic inadequacies" which affect "students" at Mapaville. State Defendants argue that J.T. lacks standing to assert claims based on the treatment of others. J.T. replies that, although his claims do address the sweeping problems at Mapaville, he alleges these facts not to seek relief for others, but as support for his claims.

### 1. Counts I and IV

In Count I, J.T. appeals the due process order that concluded he had received a free appropriate public education. J.T. does not appeal any orders affecting other students. His claims relate solely to his due process hearing and his denial of a free appropriate public education. Similarly, in Count IV, J.T. seeks relief for Defendants' unequal treatment of him on the basis of his disability and not for Defendants' treatment of others. Therefore, J.T. does not lack standing to pursue Counts I and IV on the basis that he seeks relief for injuries to others.

### 2. Counts II and III

In Counts II and III, J.T. seeks audio and video surveillance, or some other independent monitoring scheme, "to ensure that students receive proper care or education" under § 504 of the Rehabilitation Act and the ADA because Defendants do not have an adequate supervisory apparatus in place. J.T. claims that Defendants' inadequate supervision, gross misjudgment, profound incompetence and neglect have denied J.T. the reasonable accommodations necessary for him to receive the full benefits of, and excluded him from participation in, his public education program. He also claims Defendants have subjected him to intentional discrimination with respect to his public education program.

As a general rule, a party may not assert "the rights or legal interests of others in order to obtain relief from injury to themselves." Johnson, 142 F.3d at 1090. To the extent that J.T. seeks relief to "ensure that students receive proper care or education," J.T. lacks standing to assert his Rehabilitation Act and ADA claims because J.T. may not seek relief based on the injuries to other students. However, J.T. may seek relief for the effect on J.T.'s own education of Defendants' refusal to implement monitoring or surveillance.

*B.     Standing to seek declaratory and injunctive relief*

State Defendants also argue that J.T. lacks standing to seek declaratory and injunctive

relief based on his injuries during 2006–2008 because he has not demonstrated the threat of

ongoing or future harm.  J.T. argues that he has alleged a real threat that he will be harmed again.

To establish standing, J.T. must show that he has suffered an injury in fact, that State

Defendants caused the injury, and that a favorable ruling can redress his injury.  Park v. Forest

Serv., 205 F.3d 1034, 1037 (8th Cir. 2000).  "In the case of complaints for injunctive relief, the

'injury in fact' element of standing requires a showing that the plaintiff faces a threat of ongoing

or future harm."  Id.  Past wrongs are evidence of "whether there is a real and immediate threat of

repeated injury."  City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983).  But to have standing,

the plaintiff must show a "real and immediate threat that [he] would again suffer similar injury in

the future."  Park, 205 F.3d at 1037.

In Park, the Eighth Circuit held that the plaintiff lacked standing to seek injunctive relief

based on her past exposure to unconstitutional checkpoints.  Id. at 1037–38.  The court identified

two criteria for analyzing the likelihood of future injury: the probability that the plaintiff would

be stopped again and the probability that the defendants would again use an unconstitutional

checkpoint.  Id. at 1038.  In assessing the probability that the defendants would again use an

unconstitutional checkpoint, the court discussed the record and noted that "among the relevant

considerations in this regard are statements of future intent and patterns of past practice."  Id.

In this case, J.T. alleges past patterns of practice that have denied him access to a free

appropriate public education.  He also alleges ongoing discrimination in education on the basis of

his disability.  The parties have not yet conducted any discovery.  The record contains no

evidence regarding the future intent of State Defendants or anything that would inform on the probability that State Defendants will continue to deny J.T. a free appropriate public education or discriminate against him. Because I must assume the facts as alleged in a motion to dismiss, it is premature to determine whether J.T. lacks standing to pursue injunctive relief. As a result, State Defendants' motion to dismiss for lack of subject matter jurisdiction is denied without prejudice.

II.     *Multiple State Defendants*

State Defendants claim that J.T. cannot sue each of the State Defendants because they are a single entity, namely, the State of Missouri, Missouri Department of Elementary and Secondary Education, supervised by the State Board of Education, which runs the program of the State Schools for the Severely Handicapped. State Defendants also claim that the State Board cannot be subject to suit.

A.      *Missouri State Board of Education*

State Defendants argue that nothing in the Missouri statutes provides that the State Board of Education is an entity subject to suit. Missouri courts, including the Supreme Court of Missouri, allow lawsuits against the State Board. See, e.g., Bd. of Educ. of City of St. Louis v. Missouri State Bd. of Educ., 271 S.W.3d 1 (Mo. 2008). Because state law permits lawsuits against the State Board, the suit against the State Board cannot be dismissed on this basis.

B.      *Department of Elementary and Secondary Education*

The Department of Elementary and Secondary Education is the administrative arm of the Missouri State Board of Education. Mo. Rev. Stat. § 161.020; 5 CSR 1–1.010. Because the DESE is simply a part of the State Board, State Defendants argue that it cannot be sued as a separate entity from the State Board. This Court, however, notes two decisions of the Missouri

Supreme Court where the State Board and the DESE were sued in the same action.  E.g., Bd. of
Educ. of City of St. Louis v. Missouri State Bd. of Educ., Comm'r of Educ., and Missouri Dept't
of Elementary & Secondary Educ., 271 S.W.3d 1 (Mo. 2008); McEuen v. Missouri State Bd. of
Educ. and Missouri Dep't of Elementary & Secondary Educ., 120 S.W.3d 207 (Mo. 2003).
Because state law permits lawsuits against both defendants, the DESE cannot be dismissed on
this basis.

>      C.     *State Schools for the Severely Handicapped*

State Defendants contend that State Schools cannot be sued as an independent entity
because it is "not an entity, per se; rather, it is a program established by the State Board of
Education to provide educational services for severely handicapped children."

In some areas of Missouri, local special school districts provide special education.  Mo.
Rev. Stat. § 162.825.  Where a special school district exists, local boards of education and
governing councils are charged with managing the schools and programs within the district.  Mo.
Rev. Stat. §§ 162.855; 162.856; 162.857.  However, because not all areas of Missouri benefit
from a local special school district, Missouri statute requires the State Board of Education to
establish State Schools for the Severely Handicapped, now known as the Missouri Schools for
the Severely Disabled, to provide those same services.  Mo. Rev. Stat. §162.730.

State Schools is a system of day school services established to serve "students with severe
disabilities referred to the State Board of Education by local school districts which do not operate
such programs themselves and which are not a part of special school districts."  5 CSR
70–742.140, incorporating by reference the State Plan, Regulations Implementing Part B of the
Individuals with Disabilities Education Act, (rev. 2007), Chapter X, p. 144.  The school J.T.

attends, Mapaville, is not part of a locally operated special school district. Instead, it is part of the State Schools, which are administered by the State Board. The administrative arm of the State Board, the DESE operates three state-school programs for children with disabilities: the State Schools for the Severely Handicapped, the Missouri School for the Deaf, and the Missouri School for the Blind. Missouri Dep't of Elementary and Secondary Educ. v. Springfield R-12 Sch. Dist., 358 F.3d 992, 995 n.1 (8th Cir. 2004).

State programs operated by the State Board are separate entities for purposes of lawsuits. See, e.g., Strawn v. Missouri State Bd. of Educ., 210 F.3d 954 (8th Cir. 2000). In Strawn, a student named the State Board, the DESE, and the State Schools as defendants. Id. Similarly, in Springfield R-12, the DESE and its program, the Missouri School for the Blind were party-plaintiffs. 358 F.3d 992. Although State Schools is a program, it has engaged in litigation both as a party-plaintiff and as a party-defendant. The suit against State Schools cannot be dismissed simply because State Schools is a program established by the State Board.

III.    *Failure to State a Claim*

State Defendants also argue that J.T. has failed to state a claim under IDEA, ADA or the Equal Protection Clause of the Constitution.[2]

A.    *Individuals with Disabilities Education Act*

State Defendants contend that the relief J.T. seeks, namely audiovisual surveillance and compensatory damages, is not available under the IDEA. J.T. states that his IDEA claim seeks

---

[2] State Defendants initially argued that J.T.'s claims for injunctive relief are moot because he is no longer a student at Mapaville. State Defendants later withdrew this argument because whether J.T. is currently on homebound status and/or attending school is outside of the current pleadings.

only audiovisual surveillance and compensatory education services, as opposed to tort-like monetary damages. For this reason, J.T. seeks damages through the other counts of his complaint.

Congress enacted the Individuals with Disabilities Education Act "to assure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). To further this end, states that agree to provide disabled children with special education and "related services" qualify for federal financial assistance. 20 U.S.C. § 1412. A team of professionals "must develop a specialized course of instruction, known as an individualized education program, or 'IEP,' for each disabled student, taking into account that child's capabilities." Neosho R-IV Sch. Dist. v. Clark, 315 F.3d 1022, 1026 (8th Cir. 2003).

When an aggrieved party challenges an IEP as insufficient under the IDEA, a court must ensure that (1) the state complied with the procedures set forth in the Act; and (2) the IEP is "reasonably calculated to enable the child to receive educational benefits." Id. at 1026–27. To prevail on a claim challenging the implementation of an IEP, the aggrieved party "must show more than a *de minimis* failure to implement all elements of that IEP, and instead, must demonstrate that the school board or other authorities failed to implement substantial or significant provisions of the IEP." Houston Indep. Sch. Dist. v. Bobby R., 200 F.3d 341, 349 (5th Cir. 2000); Neosho, 315 F.3d at 1027 n. 3. In this case, J.T. claims his pre-December 2007 IEPs were not reasonably calculated to provide him with a free, appropriate public education. He

also claims that because his December 2007 IEP was not implemented, he did not receive a free appropriate public education.

### 1.    *Audiovisual surveillance*

J.T. petitions this Court to order the DESE to install 24-hour audio and video surveillance, or some other independent monitoring scheme, in all classrooms and hallways at State Schools, including Mapaville.  J.T. makes this request through his appeal of the Hearing Panel's Due Process Order which denied his request for surveillance.  J.T. seeks the requested audiovisual surveillance for the purpose of allowing his parent to independently view the activities at Mapaville that relate to J.T.  Complaint Exhibit 1, ¶ 27, incorporated by reference.

J.T. argues that audiovisual monitoring is available as a traditional equitable remedy under the IDEA.  The IDEA permits a court to "grant such relief as the court deems is appropriate."  20 U.S.C. § 1414(i)(2)(C)(iii).  "The ordinary meaning of these words confers broad discretion on the court."  Sch. Comm. of Town of Burlington v. Dep't of Educ., 471 U.S. 359, 369 (1996).  The IDEA does not specify the type of relief available except that it must be "appropriate" in light of the purpose of the IDEA.  Id.  As noted above, the IDEA's purpose is to provide disabled children with "a free appropriate public education which emphasizes special education and related services designed to meet their unique needs."  Id.  Therefore, this Court may order audiovisual monitoring of J.T. if the monitoring assists in providing J.T. with special education and related services.

The IDEA requires states to provide disabled children with "special education" and "related services."  Cedar Rapids Cmty. Sch. Dist. v. Garrett F., 526 U.S. 66, 68 (1999).  Clearly, audiovisual surveillance for the purpose of parental monitoring is not an educational service, and

J.T. does not argue it is. J.T. does claim, however, that "related services" broadly encompasses a number of supportive services, including audiovisual monitoring.

Under the IDEA,

> The term 'related services' means transportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, interpreting services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, school nurse services designed to enable a child with a disability to receive a free appropriate public education as described in the individualized education program of the child, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.

20 U.S.C. §1401(26)(A). The parenthetical phrase lists examples of supportive services covered by the IDEA. Cedar Rapids, 526 U.S. at 73. Each example is a service provided to the child. The list is nonexhaustive; the definition of "related services" "broadly encompasses those supportive services that may be required to assist a child with a disability to benefit from special education." See id. at 73. The issue, then, is whether the requested audiovisual surveillance may be required to assist J.T. to benefit from special education.

J.T. states that he seeks the installation of audiovisual surveillance in public areas of the school, accompanied with a monitoring room equipped with a live feed and supportive personnel, for the purpose of observing J.T.'s education and monitoring his safety. J.T. states its purpose is to ensure public oversight and to ensure that he receives the services required by his IEP. No discovery has yet been conducted. Based on the record before me, I cannot conclude as

a matter of law that the requested surveillance would not provide J.T with a service calculated to assist him in receiving special education. Therefore, State Defendants' motion to dismiss J.T.'s claim for relief by installing audiovisual surveillance is denied.

## 2. Compensatory Services

State Defendants argue that J.T. may not seek compensatory damages under the IDEA. J.T. responds that he does not seek compensatory damages, but instead seeks compensatory educational services as requested at his due process hearing. The compensatory services requested at the hearing were compensatory physical therapy and occupational therapy services for ninety minutes per week for two years to be provided at Jefferson Memorial Hospital. Under the IDEA, a court may order compensatory education services. Birmingham v. Omaha Sch. Dist., 220 F.3d 850, 856 (8th Cir. 2000). If J.T. prevails on his claim that Defendants denied him a free appropriate education, he may recover compensatory educational services. Miener v. State, 800 F.2d 749, 754 (8th Cir. 1986). As a result, I will deny State Defendants' motion to dismiss J.T.'s IDEA claim in Count I.

## B. Rehabilitation Act

Congress enacted the Rehabilitation Act, in part, to promote the inclusion and integration of persons with disabilities into mainstream society. See 29 U.S.C. § 701(a). To accomplish this, § 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .

29 U.S.C. § 794(a). The Rehabilitation Act and the IDEA complement each other. Whereas the IDEA imposes an affirmative duty on recipients of federal funds to provide a free appropriate education for disabled children, the Rehabilitation Act prohibits certain conduct on the part of recipients of federal assistance. Monahan v. Nebraska, 687 F.2d 1164, 1170 (8th Cir. 1982). Specifically, recipients of federal aid cannot discriminate against individuals based on their disabilities. Id.; M.Y. v. Special Sch. Dist., 544 F.3d 885, 888 (8th Cir. 2008).

"To state a *prima facie* case under section 504, a plaintiff must show that he or she (1) is a qualified individual with a disability; (2) was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) was discriminated against based on her disability." M.Y., 544 F.3d at 888. A plaintiff must also "show that the discrimination reflected bad faith or gross misjudgment." Id.

J.T. claims that Defendants have discriminated against him by (1) denying him reasonable accommodations which would allow him to receive the full benefits of his school program; (2) excluding him from participating in and denying the benefits of a public education program; (3) failing to provide necessary oversight, accommodations, training, and other measures; (4) refusing to implement audiovisual monitoring; (5) a pattern and practice of inadequate funding of State Schools, including Mapaville; (6) excluding J.T. from the District and placing him in the State School program which suffers systemic infirmities; and (7) failing to provide him with a free appropriate education. State Defendants move to dismiss on two bases: (1) J.T. has not adequately identified the provision of § 504 under which he seeks relief; and (2) J.T.'s claims relating to audiovisual monitoring fail to state a claim upon which relief can be granted.

State Defendants argue that because J.T. alleges a violation of § 504 of the Rehabilitation Act and does not specifically cite to the U.S. Code, J.T. should be required to allege the specific provisions of the Rehabilitation Act under which he seeks relief. Section 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794, contains only one paragraph prohibiting any conduct: section 504(a). The other provisions of § 504 do not prohibit any conduct and therefore are not capable of being violated. Section 504(b) lists definitions. Section 504(c) provides an exemption for small providers. Section 504(d) identifies the standards used to determine whether a violation has occurred. Because J.T.'s reference to § 504 can only refer to a violation of § 504(a), codified at 29 U.S.C. § 794(a), I will not dismiss J.T.'s Rehabilitation Act claim on this basis.

2.      *Refusal to implement audiovisual monitoring*

State Defendants also argue that J.T. has failed to state a claim to the extent his argument is based on their refusal to implement audiovisual monitoring and/or surveillance. J.T. asserts that audiovisual monitoring is a reasonable accommodation because he unable to vocalize neglect, abuse and the denial of a free and appropriate education.

The Eighth Circuit "has not held one way or the other on whether a failure to provide a reasonable accommodation may constitute discrimination on the basis of one's disability under section 504." M.Y., 544 F.3d at 889; Davis v. Francis Howell Sch. Dist., 138 F.3d 754, 757 (8th Cir. 1998) (stating "[t]his court has not determined whether the failure to make reasonable modifications in a policy is itself discrimination even where the policy and its rationale cannot be shown to be discriminatory."). State Defendants do not provide any authority in support of

their argument that the Rehabilitation Act does not permit the installation of video cameras as an accommodation. Therefore, I will deny State Defendants' motion to dismiss J.T.'s Rehabilitation Act claim without prejudice.

C.      *Americans with Disabilities Act*

Congress enacted the Americans with Disabilities Act ("ADA"), in part, "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA consists of four titles. Each of the separate titles focuses on

> separate types of conduct: Title I prohibits discrimination in employment against qualified individuals with disabilities. <u>See</u> 42 U.S.C. § 12112. Title II prohibits "public entities" from excluding disabled individuals from or denying them the benefits of programs, activities, or services, and from otherwise discriminating against them. <u>See</u> 42 U.S.C. § 12132. Title III prohibits discrimination or the denial of "full and equal enjoyment" of goods, services, and other benefits provided by "places of public accommodation" operated by private entities. <u>See</u> 42 U.S.C. §§ 12181(6), (7), 12182.

<u>Klingler v. Dep't of Revenue</u>, 433 F.3d 1078, 1080 (8th Cir. 2006). Title IV contains various miscellaneous provisions. 42 U.S.C. § 12201, <u>et seq.</u> Title IV's only prohibition relates to retaliation, coercion, and intimidation. 42 U.S.C. § 12203.

J.T. claims that Defendants have discriminated against him in violation of the ADA by (1) denying him reasonable accommodations to allow him to receive the full benefits of his school program; (2) excluding him from participating in and denying the benefits of a public education program; (3) failing to provide necessary oversight, accommodations, training, and other measures; and (4) refusing to implement audiovisual monitoring. State Defendants move to dismiss on three bases: (1) J.T. has not adequately identified under which title of the ADA he

seeks relief; (2) the denial of a free and appropriate education, inadequate monitoring of schools and the need for 24-hour audiovisual surveillance are not the type of wrongs that Title II was designed to address; and (3) the Eleventh Amendment bars J.T. from seeking monetary damages under the ADA.

## 1.    Specific Title of the Americans with Disabilities Act

State Defendants argue that because J.T. alleges a violation of the ADA and does not identify which Title, J.T. should be required to allege the specific section of the ADA under which he seeks relief.   As discussed above, the ADA's various titles apply to different types of discrimination.   Title I applies to employment discrimination.   Title III applies to discrimination in places of public accommodation.   Title II applies to discrimination by public entities.

Title II of the ADA provides, in relevant part, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits if the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.   In a school case, the plaintiff must also allege bad faith or gross negligence.  Hoekstra v. Ind. Sch. Dist., No. 283, 103 F.3d 624, 626–27 (8th Cir. 1996); Thompson v. Bd. of Special Sch. Dist., No. 1, 144 F.3d 574, 580 (8th Cir. 1998).

The ADA defines "public entity" as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority. . . ." 42 U.S.C. § 12131(1).   "It is plain that Missouri qualified as a 'public entity' for purposes of the ADA and that as a result it is bound by Title II of the Act." Klingler, 433 F.3d at 1080.   The Missouri State Board of Education and its component agencies also qualify as public entities for

purposes of the ADA and are thereby bound by Title II. Because J.T.'s claim against the state of Missouri can fall only under Title II of the ADA and State Defendants reference Title II as the proper section in their own memorandum, I will not dismiss J.T.'s ADA claim for failing to specify that he seeks relief under Title II of the ADA.

### 2. Type of wrong Title II was designed to address

State Defendants argue that J.T.'s ADA claim should be dismissed because the denial of a free and appropriate education, inadequate monitoring of schools and the need for 24-hour audiovisual surveillance are not the type of wrongs that Title II was designed to address. State Defendants have provided no argument or authority regarding why J.T. has failed to state a claim. State Defendants' entire argument is "the allegations of Count III do not allege the elements of a Title II claim. Plaintiff only reiterates his IDEA allegations . . . These are not the types of wrongs that Title II was designed to address." State Defendants have not offered an explanation of what element J.T.'s Title II claim lacks or an explanation of why the wrongs J.T. has alleged are not redressible by Title II of the ADA. Absent any argument or authority, I will not dismiss J.T.'s claim on the record before me.

### 3. Eleventh Amendment

State Defendants argue that Eleventh Amendment sovereign immunity shields them from claims for money damages. The ADA was enacted with a provision purporting to abrogate eleventh amendment sovereign immunity. 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action . . . for a violation of this chapter."). The Supreme Court upheld 42 U.S.C. § 12202's abrogation of state sovereign immunity in certain circumstances. United States v. Georgia, 546 U.S. 151, 159

(2006). The Supreme Court explained "[t]hus, insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." Id. Conversely, to the extent the State's conduct does not violate the Fourteenth Amendment, it is immune from money damages. Cf. id. Thus, the sovereign immunity determination must be made on a claim-by-claim basis. Klingler v. Dep't of Revenue, 455 F.3d 888, 891–92 (8th Cir. 2006).

Disparate treatment based on disability implicates the equal protection clause of the Fourteenth Amendment. Id. at 894. Because disability is not a suspect class, disparate treatment on the basis of disability is subject to rational basis review. Id. In this case, J.T. alleges that State Defendants have discriminated against him on the basis of his disability. If State Defendants' actions were to fail rational basis review, J.T. would be able to seek money damages on his ADA claim. No discovery has occurred and neither side has briefed the issue regarding whether the claimed disparate treatment survives rational basis review. It is therefore premature to determine whether J.T. may seek money damages from State Defendants on his ADA claim.

D.    *Section 1983 Equal Protection Claim*

J.T. alleges, among other things, that he "received intentionally different treatment from other similarly situated individuals" because Defendants failed to provide the same resources and training to students at State Schools that disabled students in school districts receive. J.T. also alleges that State Defendants have excluded J.T. from the school district and placed him in a State School on the basis of his disability. State Defendants move to dismiss on several bases,

including that a state agency is not "a person" subject to suit under 42 U.S.C. § 1983.[3] J.T. does

not address this argument, but responds that he has stated a valid claim for declaratory relief.

42 U.S.C. § 1983 provides, "[e]very person who, under color of [law] causes to be

subjected, any citizen of the United States or other person within the jurisdiction thereof to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

liable . . . ." "Section 1983 provides a cause of action against 'persons' only." Barket, Levy &

Fine, Inc. v. St. Louis Thermal Energy Corp., 948 F.2d 1084, 1086 (8 th Cir. 1991). A state is

not "a person" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 64, 71 (1989).

A suit against a state Board of Education or Departments of Education is also an action against

the state. Cf. Robinson v. Kansas, 295 F.3d 1183, 1191 (10th Cir. 2002) (concluding the

chairperson of the state Board of Education was a state official). Consequently, J.T. cannot bring

claims against State Defendants under § 1983. In light of the Supreme Court's clear statement

that states are not persons for purposes of § 1983, I need not address State Defendants' other

bases for dismissal of J.T.'s § 1983 Equal Protection Claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Missouri State Board of Education,

Missouri Department of Elementary and Secondary Education, and State Schools for the

Severely Handicapped's motion to dismiss [#10] is **GRANTED in part** and **DENIED in part**.

---

[3] State Defendants also move to dismiss because (1) the Eleventh Amendment bars this suit; (2) J.T. cannot seek damages from State Defendants on the theory of *respondeat superior*; (3) the Rehabilitation Act and ADA preempt J.T.'s § 1983 claims; and (4) J.T. has failed to allege that State Defendants treated him differently than they treated similarly situated defendants.

Defendants' motion is DENIED as to Counts I, II and III. Defendants' motion is GRANTED as to Count IV.

Dated this 4th day of February, 2009.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE